# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

UNITED STATES OF AMERICA

-vs-                                                    Case No.:  2:09-cr-13-FtM-29SPC

MICHELLE MCKAY

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Defendant Michelle McKay's Motion to Suppress

Evidence (Doc. #53) filed on June 1, 2009.  The Government filed its Response in Opposition (Doc.

# 59) on June 11, 2009.  On June 17, 2009, a hearing on the Motion was held before the undersigned.

At the hearing, the Government was represented by Assistant United States Attorney Jesus Casas.

The Defendant was present and represented by Russell Rosenthal, Assistant United States Public

Defender.  At that hearing, the Government called Florida Department of Law Enforcement Special

Agent Grant Wagner.  The Defendant did not call any witnesses.

## EVIDENCE AND TESTIMONY

**Spc. Agt. Grant Wagner**: (Tr. 4-46).

Special Agent Wagner (Spc. Agt. Wagner)  has served with the  Florida Department of Law

Enforcement (FDLE) since September of 2000.  (Tr.  4:20-21).  On September 11, 2008, Spec. Agt.

Wagner participated in an investigation related to real estate fraud involving the property located at

237 Eugenia Avenue in Fort Myers, Florida (the residence). (Tr. 4:22-25; 5:1-4).

Spc. Agt. Wagner wanted to interview the Defendant regarding the purchase of the residence.

(Tr. 5:5-8).  Spec. Agt. Wagner located the Defendant's place of employment by running a wage

check. (Tr. 5:9-18).  The result of the wage check showed the Defendant was employed by the Lee County School Board. (Tr. 5:19-21).  Spc. Agt Wagner went the to offices of the Lee County School Board and they directed him to where the Defendant worked. (Tr. 5:19-22).

Spc. Agt. Wagner proceed to the Southwest Florida Juvenile Detention Center, located on Ortiz Avenue in Fort Myers. (Tr. 6:8-10).  He was accompanied by Task Force Agents Rob Leverenz, and Walter Mickey. (Tr. 6:18-20).  Spc. Agt. Wagner told the staff at the front window that he wished to speak with the Defendant. (Tr. 5:9-14).  According to Spc. Agt. Wagner, the other staff members at the Defendant's place of employment did not know why he was there to see the Defendant,  and they did not participate in the interview in any way. (Tr. 5:23-25; 6:1-5).  Spc. Agt. Wagner and the others with him were dressed in plain clothes with no law enforcement insignias or firearms displayed. (Tr. 6:21-25; 7:1).

The staff at the Juvenile Detention Center took Spc. Agt. Wagner, Spc. Agts. Leverenz and Mickey to a little recreation room so they could meet with the Defendant. (Tr. 7:2-12).  After about five (5) minutes, the Defendant arrived. (Tr. 7:13-15).  Once everyone was seated, Spc. Agt. Wagner explained to the Defendant that they wanted to discuss the purchase of the residence. (Tr. 7:16-24).  He asked the Defendant if she would like to talk about her purchase or her mortgage. (Tr. 7:22-25; 8:1).  The Defendant agreed to speak with him (Tr. 8:1).

Spc. Agt. Wagner stated the Defendant seemed a little hesitant at first. (Tr. 8:2-4).  Spc. Agt. Wagner explained to the Defendant that they were there to do an interview and that she was not obligated to speak to them in any way and she could leave at anytime. (Tr. 8:4-8).  At that point, the Defendant agreed to speak with the agents. (Tr. 8:9-10).

Spc. Agt. Wagner stated that he did most of the questioning which related to her purchase of the residence and the securing of the mortgage. (Tr. 8:10-16). Specifically, Spc. Agt. Wagner testified that he asked the Defendant about the whole transaction: how she came to purchase the residence; who she purchased it from; how she obtained a mortgage; and what documentation she used to obtain it. (Tr 8:14-22).

Prior to his discussion with the Defendant, Spc. Agt. Wagner said that he had information the Defendant purchased the residence from Patricia Gray, that she received a mortgage from IndyMac, and there was a gift letter from her brother, Roy Denson, providing her with $37,000.00 for a down payment. (Tr. 8:23-25; 9:1-6). Spc. Agt. Wagner also testified that he reviewed documents provided by IndyMac regarding her mortgage. (Tr. 9:2-6). Spc. Agt. Wagner showed the gift letter to the Defendant during the interview, and asked her questions about the gift letter. (Tr. 9:7-20). Specifically, he asked the Defendant how the transaction using the gift letter came about. (Tr. 9:18-20).

The interview lasted about an hour and at no time did the Defendant state she wished to terminated the interview. (Tr. 10:7-10). No one associated with the Defendant's work, meaning a member of the Lee County School Board, or an employer was present during the interview. (Tr. 10:12-15). Spc. Agt. Wagner never disclosed the nature of the interview to anyone and did not disclose how he obtained her employment information. (Tr. 10:16-24). At the end of the interview, Spc. Agt. Wagner asked if the Defendant had any questions for them, and if she had any information about some missing documents pertaining to her down payment on the residence. (Tr. 11:3-10). The Defendant told him she thought she had some things he was looking for, and that she would look for the documents and let him know when she found them. (Tr. 11:3-10). The documents pertained to

money received as a down payment from Individual Freedom Ministries Church (IFMC) used as a down payment on the residence. (Tr. 11:13-21).

The Defendant also provided Spc. Agt. Wagner with information regarding others involved in the instant transaction.(Tr. 11:20-24).  The Defendant talked about the others involved in the transaction and provided Spc. Agt. Wagner with her brother, Roy Denson's phone number.(Tr. 11:22-25; 12:1-2).  Spc. Agt Wagner subsequently contacted, Denson and met with him on February 3, 2009, at his home in Fort Myers. (Tr. 12:3-11).

During the interview with Denson, the Defendant showed up at his Fort Myers home. (Tr. 12:12-14).  The Defendant walked into the house and began talking to them about the transaction regarding the Defendant's house. (Tr. 12:12-17).  Spc. Agt. Wagner had the IFMC documents with him that day and asked the Defendant had seen those documents. (Tr. 12:20-24).  Spc. Agt. Wagner asked if the Defendant remembered she was going to look for those documents and hand them over to him if she found them. (Tr. 12: 20-24).  The Defendant told him that she did not have those documents. (Tr. 13:1-2).  The interview ended when Ms. Gray showed up at the house and advised both of them to stop speaking with Spc. Agt. Wagner. (Tr. 13:7-10).  Prior to Gray's arrival neither Denson or the Defendant expressed an interest in ending the interview with Spc. Agt. Wagner. (Tr. 13:11-14).

Spc. Agt.Wagner testified that he never threatened the Defendant and never told her she would be arrested if she did not cooperate. (Tr. 13:18-20).

## DISCUSSION

The Defendant argues the Government illegally obtained statements from the Defendant during her interview with Spc. Agt. Wagner in violation of her <u>Miranda</u> rights.  The Defendant

argues the interview on December 11, 2008, was clearly custodial and therefore, the Defendant should have been read her <u>Miranda</u> rights prior to the interview process. The Government responds the statements were completely voluntary and at no time was the Defendant held in custody.

<u>Miranda v. Arizona</u>, requires that before a defendant in custody can be interrogated that the Defendant be informed of: (1) the Defendant's right to remain silent; (2) that statements can and will be used against them in a court of law; (3) that the Defendant has the right to an attorney during questioning; and (4) that if the Defendant cannot afford an attorney one will be appointed. 384 U.S. 436, 478-479, 86 S. Ct. 1602, 16 L. Ed. 694 (1966). The Supreme Court defined interrogation as "express questioning or words and actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-301, 100 S. Ct. 1682, 64 L. Ed. 297 (1980). Under <u>Miranda</u>, custody is the depravation of freedom of action normally associated with an arrest. <u>Id.</u> at 444. The initial determination of custody depends on the objective circumstances of interrogation and not on the subjective views harbored by either the officer or the Defendant. <u>Stansbury v. California</u>, 511 U.S. 318, 323 (1994) (*per curiam*).

### (1) Whether the Defendant was in Custody During the Interview

The Defendant claims she was in custody while being interviewed by Spc. Agt. Wagner. The Defendant was in a room at her place of employment with three (3) male agents and therefore, she contends that it is not realistic to conclude she believed she was free to leave.         However, contrary to the Defendant's arguments, custody depends on the objective circumstances of interrogation and not on the subjective views harbored by either the officer or the Defendant. <u>Id.</u>

Spc. Agt. Wagner testified that from the beginning, he explained to the Defendant that they were there to do an interview and that she was not obligated to speak to them in any way and she could leave at any time. (Tr. 8:4-8). At that point, the Defendant agreed to speak with the agents. (Tr. 8:9-10). The interview lasted about an hour and at no time did the Defendant state she wished to terminated the interview. (Tr. 10:7-10). No one associated with the Defendant's work, meaning a member of the Lee County School Board, or an employer was present during the interview. (Tr. 10:12-15). Spc. Agt. Wagner never disclosed the nature of the interview to anyone and did not disclose how he obtained her employment information. (Tr. 10:16-24). Spc. Agt. Wagner testified that he never threatened the Defendant and never told her she would be arrested if she did not cooperate. (Tr. 13:18-20).

Thus, the fact the Defendant was at her own place of employment and was informed she was free to leave and she did not have to speak with Spc. Agt. Wagner is strong evidence that the Defendant was not in custody and was free to leave if she had so desired. Thus, it is respectfully recommended the Defendant was not in custody at the December 11, 2008, interview with Spc. Agt. Wagner.

### *(2) Whether the Statements were Voluntary*

The Defendant also argues that even if she was not in custody, any statements made by her should be suppressed because they were not voluntary.

Where an individual's statement is sought to be admitted in the prosecution of a criminal offense, there must be evidence by a preponderance that the statement was made voluntarily. Lego v. Twomey, 404 U.S. 477, 489. 93 S. Ct. 619, 627, 30 L. Ed. 2d 618 (1972); U.S. v Thompson, 422 F. 3d 1285, 1295 (11th Cir. 2005) (quoting Braham v. U.S., 168 U.S. 532, 542 (1897)). The

standard used for determining if a statement was voluntarily made is whether, taking into account the totality of the circumstances, the statement was "the product of a free and deliberate choice rather than intimidation, coercion or deception." Colorado v. Connelly, 479 U.S. 157, 170, 107 S, Ct. 515, 93 L. Ed. 2d 473 (1986). The focus of the inquiry into a statement's voluntariness is whether the defendant was coerced by the government into making the statement. U.S. v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir. 1992). Courts in the Eleventh Circuit have followed the Braham analysis of coercive governmental action to include . . . any sort of threats or violence, direct or implied promises, however, slight or any improper influence." 168 U.S. at 542-543; Thompson, 422 F. 3d at 1295; Leon v. Wainwright, 734 F. 2d 770, 772 (11th Cir. 1984). Although the prosecution has the burden of proof, "[a]bsent police conduct causally related to the confession there is . . . no basis for concluding that any state actor has deprived a criminal defendant of the due process of law. Thompson, 422 F. 3d at 1296 (citing Connelly, 479 U.S. at 164).

Here, it is clear that there was no coercion, threats, or promises made to the Defendant to force her or entice her into making statements. As noted above, Spc. Agt. Wagner testified that from the beginning, he explained to the Defendant that they were there to do an interview and that she was not obligated to speak to them in any way and she could leave at any time. (Tr. 8:4-8). At that point, the Defendant agreed to speak with the agents. (Tr. 8:9-10). The interview lasted about an hour and at no time did the Defendant state she wished to terminated the interview. (Tr. 10:7-10). No one associated with the Defendant's work, meaning a member of the Lee County School Board, or an employer was present during the interview. (Tr. 10:12-15). Spc. Agt. Wagner never disclosed the nature of the interview to anyone and did not disclose how he obtained her employment information.

(Tr. 10:16-24). Spc. Agt. Wagner testified that he never threatened the Defendant and never told her she would be arrested if she did not cooperate. (Tr. 13:18-20).

The fact that the Defendant and Spc. Agt. Wagner met again by chance at her brother Denson's house and continued to talk is a strong indicator to the Court that the Defendant was not coerced or threatened in any way into making any statements to Spc. Agt. Wagner during the first interview. Ms. Gray entered the picture at Denson's house that the Defendant refused to speak with the Spc. Agt. Wagner. Thus, it is respectfully recommended that the Defendant's statements made at the December 11, 2008, interview were freely, knowing and voluntarily made.

Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The Defendant Michelle McKay's Motion to Suppress Evidence (Doc. #53) should be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended at Fort Myers, Florida, this   24th   day of June, 2009.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record